**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

NISSAN MOTOR ACCEPTANCE CORP.,    *
                                         *

        Plaintiff,               *

                                   *       Case No. SAG-18-3528

            v.                  *

                                   *

PENSARE, LLC, *et al.,*            *

                                   *

        Defendants.          *

                                   *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## <u>MEMORANDUM OPINION</u>

Plaintiff, Nissan Motor Acceptance Corporation ("NMAC") filed this lawsuit against Defendants Pensare, LLC ("Pensare") and Pensare's owner and operator, Donato Sauro (collectively "Defendants") seeking to collect sums owed to NMAC under various loan agreements. ECF 1. Currently pending before the Court is NMAC's motion for summary judgment ("the Motion"), ECF 28, and supporting memorandum of law, ECF 28-1. Defendants have not filed an opposition, and the deadline has now expired. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the reasons stated herein, the Motion will be granted, and damages awarded as described.

**Factual Background**

Sauro owned and operated Pensare, which did business as a car dealership known as "Tischer Acura/Nissan" ("the Dealership"). *See, e.g.,* ECF 28-6; ECF 28-14 ¶ 4. On June 14, 2002, NMAC entered into an Automotive Wholesale Financing and Security Agreement with Pensare ("the Floor Plan Agreement"), evidencing floor plan financing that NMAC made available to Pensare. ECF 28-3; ECF 28-14 ¶ 8. The Floor Plan Agreement provided, in relevant part, that

NMAC would retain a security interest in the vehicles in the Dealership's possession, and the Dealership would make payment to NMAC upon disposition of any vehicles or other property. ECF 28-3 ¶¶ 2.3.2, 2.4. If the borrowed amounts were not remitted to NMAC in a timely manner after sale of a vehicle, the amounts would be deemed "out of trust." ECF 28-14 ¶ 10.

On February 15, 2016, NMAC and Pensare also signed a Capital Loan and Security Agreement ("the Term Loan Agreement"), documenting the terms of a $1,000,000.00 loan that NMAC made to Pensare. ECF 28-4. The Term Loan Agreement again provided that NMAC had a security interest in the Dealership's property, including the vehicles. *Id.* In addition, Defendant Sauro signed a personal guaranty on October 12, 2000, which he reaffirmed on June 14, 2002, under which he personally guaranteed payment of Pensare's "present and future" liabilities to NMAC ("the Sauro Guaranty"). ECF 28-5.

In 2018, NMAC determined that Pensare had not satisfied the working capital and net cash requirements of the Floor Plan Agreement and the Term Loan Agreement. ECF 28-6; ECF 28-14 ¶ 15. On or about March 14, 2018, NMAC and the Defendants executed a forbearance agreement ("the Forbearance Agreement"), under which NMAC agreed to forbear from enforcing its rights and remedies under the Loan Agreements until June 8, 2018 or another default, whichever occurred sooner, in exchange for Defendants' commitment to capitalize the Dealership in accordance with agreed terms. ECF 28-14 ¶ 16.

However, an audit conducted on October 15, 2018, revealed that Pensare had sold fifty-eight vehicles from trust without remitting the required proceeds to NMAC. *See* ECF 28-14 ¶ 17; ECF 28-3 ¶ 3.4 ("All funds, Proceeds or other property belonging to NMAC, or required to be delivered to NMAC, and received by Dealer shall be received by Dealer in trust for NMAC and shall be paid to NMAC immediately."). Those actions constituted an additional default under the

Loan Agreements, resulting in termination of the forbearance period. ECF 28-7. As a result, NMAC exercised its right under the Floor Plan Agreement to place a contractor at the Dealership to monitor sales transactions, in order to protect its collateral. ECF 28-14 ¶ 18. Also, on October 16, 2018, NMAC sent a Default Notice to Defendants, notifying them of the October 15, 2018 audit findings, and demanding repayment of the balance owed on the fifty-eight vehicles ($1,626,039.18) on or before October 18, 2018. ECF 28-14 ¶ 19; ECF 28-7.

Defendants failed to make the payment. ECF 28-14 ¶ 20. NMAC sent another letter on October 17, 2018 ("the Termination Notice"), stating that NMAC would terminate the availability of floor plan financing as of December 17, 2018, and would require immediate payment of amounts owed under the loan agreements between NMAC and Pensare. ECF 28-8.

After receiving the Termination Notice, the Dealership continued to sell vehicles out of trust, without remitting the contractually required amounts to NMAC. ECF 28-14 ¶ 22. Accordingly, NMAC accelerated all amounts due under the Loan Agreements in a demand letter dated November 7, 2018. *See* ECF 28-3 ¶ 5.2 (stating remedies NMAC could pursue in the event of a default). As of November 14, 2018, when the Complaint was filed, Defendants owed NMAC approximately $17 million. ECF 28-14 ¶ 24.

At NMAC's request, and with the consent of the Defendants, the Court granted temporary injunctive relief to preclude Defendants from selling additional vehicles out of trust, and issued a writ of replevin for the Dealership's inventory. ECF 14, ECF 20. The Court scheduled a preliminary injunction and show cause hearing on January 2, 2019. *Id.* Prior to that hearing, Defendants notified NMAC of their intent and preliminary commitments to sell the Dealership (both the Nissan and Acura segments). ECF 28-14 ¶ 25. The parties entered a Stipulation and Consent Order allowing Defendants to continue to pursue the sales, with certain restrictions. ECF

19. The Stipulation and Consent Order included an agreement that as of January 2, 2019, the out of trust position was almost $ 4 million. *Id.* ("As of January 2, 2019, the aforesaid out of trust position totals $3,979,939.77.").

Pensare first closed the sale of its Acura segment on March 1, 2019. ECF 28-14 ¶ 27. In connection with the closing, the Acura purchaser paid the full floor plan balance associated with the Acura inventory. *Id.* ¶ 28. Defendants executed a Payoff Letter agreeing that they would remain liable to NMAC for the balance of the unpaid indebtedness. *Id.* ¶ 27. Some portion of the other payments made by the Acura purchaser to Defendants were remitted to NMAC and applied to the balance on the Floor Plan Loan. *See id.* ¶ 29. The closing of the sale of the Nissan segment, on March 15, 2019, resulted in similar payments and transactions. *Id.* ¶ 30-34. In total, as of August 23, 2019, there remains due and owing: 1) under the Floor Plan Agreement, $1,378,610.31 in principal, $178,807.51 in accrued interest, $59,500.00 in contractor fees, and $69,696.00 in security fees; and 2) under the Term Loan Agreement, $129,943.82 in principal, and $10,395.36 in unpaid interest. *Id.* ¶ 35. In total, as of August 23, 2019, Pensare (and Sauro pursuant to the Guaranty) owed $1,826,953.00 to NMAC. ECF 28-14 ¶ 35. In addition, interest accrues on the principal for the Floor Plan Agreement at the rate of $283.02 per diem, and under the Term Loan Agreement at $56.85 per diem. *Id.*

The Loan Agreements also entitle NMAC to its enforcement costs, including attorneys' fees and expenses, in the event of the Dealership's default. *See* ECF 28-3 ¶ 5.2; ECF 28-4 ¶ 11F.

**Summary Judgment Standard**

Federal Rule of Civil Procedure 56(c) provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as

a matter of law." Fed. R. Civ. P. 56(c)(2). The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). Whether a fact is material depends upon the substantive law. *See id.*

"Although the failure of a party to respond to a summary judgment motion may leave uncontroverted those facts established by the motion, the moving party must still show that the uncontroverted facts entitle the party to 'a judgment as a matter of law.'" *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993); *see Johnson v. United States*, 683 F. Supp. 2d 379, 381 (D. Md. 2010). "Thus, the court, in considering a motion for summary judgment, must review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law." *Custer*, 12 F.3d at 416.

**Analysis**

The Floor Plan Agreement, Term Loan Agreement, and Sauro Guaranty all constitute valid contracts between NMAC and the Defendants, and the Defendants' non-performance under those agreements constitutes breach. The uncontroverted evidence, including the Consent Order signed by Defendants' counsel, reflects that Pensare sold vehicles out of trust in violation of the Floor Plan Agreement. ECF 19. That action constitutes default, and permits NMAC to collect all sums due under the Agreements and the Sauro Guaranty. The Payoff Statement attached to the Motion, ECF 28-13, and the affidavit from the Special Credit Manager of NMAC, establishes the amounts due and owing as of August 23, 2019, as set forth above. ECF 28-14 ¶ 35. Defendant Sauro is

personally liable under the Sauro Guaranty.  ECF 28-5.  Accordingly, judgment will be entered for NMAC in the amounts due and owing, plus accrued interest.

**Attorneys' Fees and Costs**

As noted above, NMAC is also entitled to recover its attorneys' fees and costs, but it has not submitted any evidence of those fees and costs to date.  To the extent NMAC seeks an award of attorneys' fees and costs, it should submit a motion within fourteen days of entry of this Judgment, in compliance with the Local Rules. *See* Loc. R. 109.2.  After NMAC submits its motion, Defendants will then be permitted an opportunity to file an opposition to the award of fees or to the amount sought.

An implementing Order follows.

Dated:  October 28, 2019                                         _____/s/_____
                                                                                      Stephanie A. Gallagher
                                                                                      United States District Judge